IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRY L. HOLLINGER et al.,** | : | |
| Plaintiffs | : | No. 1:24-cv-00903 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **SUNTRUST/TRUIST BANK, et al.,** | : | (Magistrate Judge Schwab) |
| Defendants | : | |

## ORDER

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS**:

On June 3, 2024, pro se Plaintiffs Terry L. Hollinger and Michelle L. Hollinger ("Plaintiffs") filed a complaint in this Court. (Doc. No. 1.) On June 4, 2024, Plaintiffs filed a document titled "Defendant's Order to Cease [and] Desist, Order to Stay[;] Demand for the Origin of Credit and Removal to Federal Court for Notice of Criminal Violations." (Doc. No. 4.) Six days later, on June 10, 2024, Plaintiffs filed an amended complaint. (Doc. No. 5-1.) The amended complaint appears to challenge rulings made in a state mortgage foreclosure action in the York County Court of Common Pleas. (Doc. No. 5-1.) Plaintiffs name the following Defendants: SunTrust Bank ("Truist Bank"),[1] with William H. Rogers, Jr. listed as the representative of Truist Bank, and McCabe, Weisberg, and Conway, LLC ("MWC LLC"), with Christine Graham listed as the representative of the law firm. (Id. at 2.) On June 25, 2024, Defendant Truist Bank moved to strike Plaintiffs' "notice of removal" (Doc. No. 8), and on July 1, 2024, it moved to dismiss Plaintiffs' amended complaint (Doc. No. 12).

---

[1] According to the Notice of Disclosures filed by Defendant Suntrust Bank, SunTrust Bank ceased to exist after a merger between BB&T Bank and SunTrust Bank. (Doc. No. 7.) The merger between the two banks created Truist Bank. (Id.) Therefore, the Court will refer to Defendant SunTrust Bank as Defendant Truist Bank.

Now before the Court is the July 24, 2024 Report and Recommendation of Magistrate Judge Schwab (Doc. No. 15), which recommends that the Court dismiss Plaintiffs' amended complaint with leave to file a second amended complaint (id. at 15), "remand the case to the York County Court of Common Pleas" (id. at 14), and deny Defendant Truist Bank's motions to strike (Doc. No. 8) and dismiss (Doc No. 12) as moot because Plaintiffs fail to plead facts sufficient to establish diversity jurisdiction pursuant to 28 U.S.C. § 1332 (id. at 8–10) and fail to plead facts or cite any federal statute "sufficient to raise a federal controversy" pursuant to 28 U.S.C. § 1331 (id. at 10–13).  Plaintiffs filed documents titled "Petitioner's Response to the Court's Recommendation Whether to Admit a Removal from the County Court to the Federal District Court" (Doc. No. 16), "Petitioner's Claim as Holder in Due Course Pursuant to UCC Section 3-301 in Opposition to Enforcement of Local Rules 7.8" (Doc. No. 16-1), "Petitioner's Response to Certification in Support of Defendant Truist Bank's Motion to Strike and Dismiss Plaintiff's Notice of Removal" (Doc. No. 17, 17-1 (titling both documents 17 and 17-1 with the same title)), and "Petitioner's Response to Respondent's Defendant [sic] Truist Bank's Memorandum of Law in Support of Its Motion to Strike and Dismiss Plaintiff's Notice of Removal" (Doc. No. 17-2) as responsive submissions to the Report and Recommendation.  The Report and Recommendation and Plaintiffs' documents are therefore ripe for review and disposition.  As discussed more fully below, the Court will overrule Plaintiffs' submissions to the Report and Recommendation (Doc. Nos. 16–17) and adopt in part the Report and Recommendation (Doc. No. 15).

In her Report and Recommendation, Magistrate Judge Schwab addresses whether the complaint pleads sufficient facts to establish subject matter jurisdiction based on either diversity jurisdiction or federal question jurisdiction.  (Id. at 9.)  As to diversity jurisdiction, Magistrate

Judge Schwab finds that Plaintiffs adduce no facts to support a finding that diversity exists between each plaintiff and each defendant. (Id. at 8 (citing Kissi v. Gillespie, 348 F. App'x 704, 704–06 (3d Cir. 2009) (unpublished).) Magistrate Judge Schwab explains that Plaintiffs do not indicate the state of incorporation for Defendant Truist Bank and only adduce that Defendant Truist's principal place of business is the State of North Carolina. (Id. at 4.) Magistrate Judge Schwab also notes that Plaintiffs fail to provide the state of incorporation and the principal place of business of Defendant MWC LLC. (Id.) Therefore, Magistrate Judge Schwab finds that evidence of diversity jurisdiction is lacking because Plaintiffs must plead the citizenship of both Defendants, which means that Plaintiffs must allege both the principal place of business and the state of incorporation for Truist Bank and citizenship of all members of MWC LLC.[2] See (id. at 10); Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 106 (3d Cir. 2015).

With regard to federal question jurisdiction, Magistrate Judge Schwab finds that Plaintiffs either rely on inadequate statutes that do not create causes of action or fail to adduce facts to support a determination that there is a federal controversy. (Doc. No. 15 at 11–12.) Magistrate Judge Schwab observes that Plaintiffs cite: (1) the Federal Rules of Evidence and GAAP Accounting Principles which do not create causes of action (id.); (2) chapter 38 of title 31 of the United States Code (a statute establishing the available administrative remedies for false claims and statements) which creates no private right of action (id. (emphasis added)); and (3) 28 U.S.C. § 1746 (a statute establishing the validity and required form of unsworn declarations under penalty of perjury) which provides no cause of action (id.). Of the statutes and laws that

---

[2]   The Court notes that Defendant MWC LLC is a limited liability company, which, for the purposes of determining diversity jurisdiction, requires Plaintiffs to plead the citizenship of each member of Defendant MWC LLC and allege that those citizenships differ from Plaintiffs' own. See Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 106 (3d Cir. 2015).

Plaintiffs cite with private rights of action, such as fraud and the Truth in Lending Act (id. at 12), Magistrate Judge Schwab maintains that Plaintiffs merely mention fraud without offering more (id.) or allege impressions about their property rights without making factual allegations about failure to disclose terms surrounding their mortgage (id.). Accordingly, Magistrate Judge Schwab finds that Plaintiffs fail to establish federal question jurisdiction as well.

Finally, Magistrate Judge Schwab notes that Plaintiffs fail to include a copy of all process, pleadings, and orders served upon them to support their notice of removal pursuant to Rule 11 of the Federal Rules of Civil Procedure, as required by 28 U.S.C. § 1446(a). (Id. at 13.) Accordingly, Magistrate Judge Schwab recommends that the Court remand this case to the York County Court of Common Pleas. (Id.)

Magistrate Judge Schwab recommends, therefore, that "the Court dismiss [Plaintiffs'] amended complaint for lack of subject-matter jurisdiction [with] leave to file a second amended complaint" (id. at 15) and that the Court "deny as moot the pending motion to strike the notice of removal and motion to dismiss the complaint" (id. at 15), all in addition to remanding the case back to state court (id. at 13).

In their submissions aiming to respond to the Report and Recommendation, Plaintiffs contest the dismissal of the amended complaint. (Doc. Nos. 16, 16-1, 17, 17-1, 17-2.) To support their assertion, Plaintiffs claim in one filing that there was a contract with Defendants requiring them to provide an "origin of credit" before foreclosure. (Doc. No. 16 at 2.) Plaintiffs offer no evidence to support that conclusory allegation. See generally (id.). Then, Plaintiffs claim that there is a violation of the Eleventh Amendment and that United States citizens are "foreign to the several States and subjects of the [federal] U[nited states]/S[tate] of N[ew] C[olumbia]/D[istrict] [of] C[olumbia]." (Id. at 8.) After that, Plaintiffs appear to copy and paste

select passages out of executive agency documents (id. at 9–10), statutes (id. at 10–12), and case law (id. at 12–18). A similar pattern is followed by Plaintiffs in the other documents filed after the Report and Recommendation. See, e.g., (Doc. Nos. 16-1, 17, 17-1, 17-2). In fact, another one of Plaintiffs' filings reads:

> [Petitioner], declares, affirms, and asserts that there is 'no right of action' where there is fraud in the assignment process where there was never a perfected contract between the parties with both signatures in the presence of a notary. Signatures are added later by the lender, and the home buyer never see any evidence of their legal obligation. This is the mode of operation for the mortgage industry, and no mortgage is ever perfected as a legal binding bilateral contract.

(Doc. No. 17 at 2.) The document asserts that there was a violation of "[r]egulation Z" when an attending trustee did not inform the Hollingers that a bank had received funds and switched the Hollingers to a security transaction without their knowledge and permission. (Id.) Plaintiffs then cite the bankruptcy case In re Shelly, No. 23-35477, 2023 WL 8061425 (Bankr. S.D.N.Y. Nov. 20, 2023), to support their proposition that there is federal question jurisdiction.[3] (Doc. No. 17 at 2–4.) In their memorandum of law section, Plaintiffs include pasted references to numerous guides and sources of law unsuitable for the determination here. (Id. at 4 (citing a guide for

---

[3] In In re Shelly, Debtors Shelly and Warren Jones filed a voluntary petition for relief under Chapter 7 of the Bankruptcy code while also initiating an adversary proceeding against PennyMac Loan Services, LLC ("PennyMac") for "violations of the Fair Debt Collection Practices Act," when PennyMac continuously harassed them before effectuating a foreclosure proceeding in state court. See In re Shelly, No. 23-35477, 2023 WL 8061425, at *1–2 (Bankr. S.D.N.Y. Nov. 20, 2023). Defendant PennyMac moved for dismissal of the action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See id. Although this Court acknowledges that In re Shelly discusses the same standards of assessment for 12(b)(6) motions and facts relating to a foreclosure case like the one at issue here, Plaintiffs offer no argument as to why In re Shelly, its facts, or its holdings apply here. (Doc. No. 17.) Moreover, the Court finds that, despite the similarities between the instant case and In re Shelly, In re Shelly concerns an action brought under the Fair Debt Collection Practices Act and Fair Credit Reporting Acts, neither of which Plaintiffs invoke here. See In re Shelly, 2023 WL 8061425, at *4–5. Therefore, In re Shelly does not support a finding that the facts presented in the amended complaint are sufficient to establish federal question jurisdiction or diversity jurisdiction.

attorneys in wrongful foreclosure actions in Orange County, California; information on the illegality of and defense against securitization; information on the origin of credit and source of the funds; and other documents related to finance).)  Plaintiffs' request ends by stating "[d]efendant [sic] declare assert and affirm that here are the 11 basic arguments that will support this amended complaint."  (Id. at 35.)  Although the Court has made its best attempt to parse Plaintiffs' filings, the foregoing is the culmination of what sense the Court could make of Plaintiffs' filings.

A district court is authorized to accept, reject, or modify the findings or recommendations made by the magistrate judge.  See 28 U.S.C. § 636(b)(1); L.R. 72.3.  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  See Goney v. Clark, 749 F.2d 5, 6 (3d Cir. 1984) (holding that de novo review is not required where a party's objections were general in nature and lacked specificity as required by 28 U.S.C. § 636(b)(1)).

Having considered Plaintiffs' "objections" to the Report and Recommendation, the Court agrees with Magistrate Judge Schwab's conclusion that this Court lacks subject matter jurisdiction over Plaintiffs' amended complaint (Doc. No. 5-1), and that Truist Bank's motion to strike notice of removal (Doc. No. 8) and motion to dismiss the amended complaint (Doc. No. 12) should be denied as moot.  The Court further determines that this case should be remanded to the York County Court of Common Pleas.[4]

---

[4]  Although Plaintiffs filed a complaint to initiate this action and subsequently a document titled notice of removal, the Court construes this case as a removal action for three reasons.  First, Plaintiffs filed a similar, if not the exact same, "notice of removal" in state court on May 28, 2024, six days before filing their complaint in this Court.  See Truist Bank v. Terry L. Hollinger, et al., No. CP-SU-002548-2022 (York Cnty. Ct. Com. Pl. filed May 28, 2024); (Doc. No. 1

Preliminarily, the Court agrees with Magistrate Judge Schwab that this case relates to a civil case filed in of the York County Court of Common Pleas and that remand is appropriate. Removal was effectuated when, on May 28, 2024, Plaintiffs filed a document with "removal to federal court" in the title in state court.[5]  See Truist Bank v. Terry L. Hollinger, et al., No. CP-SU-002548-2022 (York Cnty. Ct. Com. Pl. filed May 28, 2024).  Then, Plaintiffs filed a complaint and a similar document with "removal to federal court" in the title with this Court. (Doc. Nos. 1, 4.)  Finally, although we have no concrete evidence that Truist Bank was served with the "notice of removal," Truist Bank filed its motion to strike the notice of removal (Doc. No. 8), which the Court interprets as an indication that it received Plaintiffs' submission.

---

(recording date of filing as June 3, 2024)). Second, Plaintiffs' submissions focus on preventing the foreclosure proceeding that is occurring in the York County Court of Common Pleas.  See generally, (Doc. Nos. 1, 4–5, 14, 16–17).  Third, and lastly, Plaintiffs are proceeding pro se, which prompts the Court to view the submissions more liberally.  See Siers v. Morrash, 700 F.2d 113, 116 (3d Cir. 1983) (recognizing that pro se litigants may not be familiar with courtroom procedures); Tabron v. Grace, 6 F.3d 147, 153 n.2 (3d Cir. 1993) (citations omitted) (reflecting that courts traditionally give pro se litigants greater leeway where they have not followed the technical rules of pleading and procedure).  Accordingly, the Court finds that the core of Plaintiffs' submissions is removal of the foreclosure case from state court to federal such that remand is the appropriate action here.

[5]   The Court obtained this information from Plaintiffs' "notice of removal."  (Doc. Nos. 1, 4 (providing the Court with the Court of Common Pleas of York County docket number 2022-SU-002548).)  The docket sheet for this case is available at the York County Court of Common Pleas Prothonotary Web portal. York County Prothonotary Off., http://prothysearchnew.yorkcountypa.gov/(S(bxano1i0cwcocdevhvamphk4))/Default.aspx (last visited Oct. 15, 2024).  The Court may take judicial notice of this docket.  See Fed. R. Evid. 201(b)(2) (establishing that a court may take judicial notice of facts that are capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned); In re Congoleum Corp., 426 F.3d 675, 679 n.2 (3d Cir. 2005) (citations omitted) ("We take judicial notice of the state court proceedings insofar as they are relevant here."); see also Finnegan v. Mikielski, No. 23-cv-00326, 2024 WL 3013738, at *1 n.3 (W.D. Pa. June 14, 2024) (citations omitted) (listing district and appellate court cases in the Third Circuit that support courts taking judicial notice of state court dockets even at the motion to dismiss stage); Deeck v. Singer, No. 24-cv-01929, 2024 WL 3889097, at *1 n.1 (E.D. Pa. Aug. 20, 2024) (citations omitted).

Therefore, notwithstanding the defects within Plaintiffs' "notice of removal,"[6] the Court considers removal to be effectuated insofar as the Court has jurisdiction enough to determine whether subject matter jurisdiction exists.  See Brown v. Teva Pharmaceuticals, Inc., 414 F. Supp. 3d 738, 741 (E.D. Pa. Oct. 23, 2019) (citing In re Diet Drugs, 282 F.3d 220, 231 n.6 (3d Cir. 2002)) (concluding that Third Circuit jurisprudence instructs that removal is effective upon filing a notice of removal in both the relevant federal court and state court).  Upon removal, the Court may remand a case "at any time before final judgment" if it determines that it lacks subject matter jurisdiction to hear the case.  See 28 U.S.C. § 1447(c); Mints v. Educational Testing Service, 99 F.3d 1253, 1258 (3d Cir. 1996) ("The duty of the district court to remand the case for lack of subject matter jurisdiction is not dependent on either party moving for a remand."). Therefore, the Court is free to analyze whether it can remand the case for lack of subject matter jurisdiction.  See 28 U.S.C. § 1447(c); see also Caterpillar, Inc. v. Lewis, 519 U.S. 61, 69 (1996) (maintaining that a case can be remanded at any time before final judgment).

      Analyzing the instant case, the Court finds that there are three barriers to subject matter jurisdiction in this case: (1) Plaintiffs fail to aver facts to establish diversity jurisdiction; (2) Plaintiffs fail to aver facts to establish federal question jurisdiction; and (3) the Rooker-Feldman doctrine.  Because Magistrate Judge Schwab's Report and Recommendation comprehensively and correctly addresses points (1) and (2) (Doc. No. 15 at 12–13), the Court addresses only point (3).

---

[6]  As Magistrate Judge Schwab points out, Plaintiffs' "notice of removal" is hard to parse, and it fails to include any of the state court process and papers required by the removal statute.  (Doc. No. 15 at 3, 13.)  Nevertheless, as stated above, the Court follows the traditional practice of liberally construing Plaintiffs' submission.  See Siers, 700 F.2d at 116; Tabron, 6 F.3d at 153 n.2.

The Rooker-Feldman doctrine bars the federal courts from exercising subject matter jurisdiction over cases brought by "state court losers" who seek to collaterally attack state-court judgments rendered prior to the commencement of the federal case. See Lance v. Dennis, 546 U.S. 459, 460 (2006) (citing Exxon Mobile Corp v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005)). "A claim is barred by Rooker-Feldman under two circumstances; first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication." In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005). For the consideration of the latter circumstance, the Third Circuit has determined that a federal claim is inextricably intertwined with the state court adjudications when: "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." See Walker v. Horn, 385 F.3d 321, 329 (3d Cir. 2004).

Here, Plaintiffs failed to appear in state court to fight a foreclosure action, and a default judgment was entered against them. See Truist Bank v. Terry L. Hollinger, et al., No. CP-SU-002548-2022 (York Cnty. Ct. Com. Pl. filed Oct. 4, 2023). After the default judgment, the Sheriff's Office of York County began a sale of Plaintiffs' property. See id. (York Cnty. Ct. Com. Pl. filed Oct. 20, 2023). The Sheriff's Office eventually sold Plaintiffs' property on April 8, 2024. See id. (York Cnty. Ct. Com. Pl. filed Apr. 26, 2024). Only then did Plaintiffs begin engaging in the state court proceeding and turn to this Court for relief from foreclosure. See id. (York Cnty. Ct. Com. Pl. filed Apr. 8, 2024); (Doc. No. 1). In Plaintiffs' filings, they argue, from what the Court can glean, that: "[t]he Sheriff should have never transferred the deed to Paul Witmer, Jr." (Doc. No. 4 at 2); that they "are seeking for an opportunity to cure on the part of the

9

York County court and a restoration of ownership status of their deed" (Doc. No. 5-1 at 8); and that "the equity of redemption creates a right in every mortgagor to redeem the property, i.e., to pay off the debt and remove the lien encumbrance from the property" (Doc. No. 17 at 35).  In the face of those assertions, the Court concludes that Plaintiffs seek to either prevent or forestall the foreclosure of their home.  Anything that Plaintiffs request the Court to do with regard to the already completed foreclosure and sale of the property would require this Court to intrude upon the state court judgment.  See Knapper, 407 F.3d at 581 (holding that the Rooker-Feldman doctrine bars lower federal courts from exercising subject matter jurisdiction over adversary proceedings to set aside state foreclosures and sheriff's sales).  Accordingly, the instant case is inextricably intertwined with the state court case and is barred by the Rooker-Feldman doctrine.  Therefore, the Court lacks subject matter jurisdiction and must remand the case because Plaintiffs fail to plead facts sufficient to determine the diversity of every defendant, fail to plead facts establishing federal question jurisdiction, and, most conclusively of all, the Rooker-Feldman doctrine bars this Court from exercising subject matter jurisdiction.  Therefore, the Court will remand this case back to state court.

**AND SO**, on this 21st day of October 2024, upon independent review of the record and applicable law, **IT IS ORDERED THAT**:

1. The Court **ADOPTS IN PART** Magistrate Judge Schwab's Report and Recommendation (Doc. No.15)

2. The Clerk of Court is directed to **REMAND** the above-captioned case to the Court of Common Pleas of York County and **CLOSE** the case;

3. Defendant Truist Bank's motion to strike and dismiss Plaintiffs' notice of removal (Doc. No. 8) is **DENIED as moot**; and

4. Defendant Truist Bank's motion to dismiss (Doc. No. 12) is **DENIED as moot**.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania